# COMMONWEALTH OF VIRGINIA



## ROANOKE COUNTY CIRCUIT COURT
Civil Division
305 EAST MAIN STREET
SALEM  VA
(540) 387-6205

Proof of Service

Virginia:
In the ROANOKE COUNTY CIRCUIT COURT

Case number: 161CL19000966-00
Service number: 001
Service filed: July 12, 2019
Judge: CND

Served by: SPECIAL PROCESS SERVER
Style of case: DAVID BROOKS  vs RISK MGMT PROGRAMS INC
Service on: RISK MGMT PROGRAMS INC
            SUBSIDIARY OF METIS HOLDINGS
            C/O B L CRUMP
            REGISTERED AGENT
            100 SHOCKOE SLIP, 2ND FLOOR
            RICHMOND VA 23219

Attorney: WILLIAMS, MELVIN B; ESQ
          1320 THIRD STREET, SW
          ROANOKE VA 24016

Instructions:

Returns shall be made hereon, showing service of Summons issued Friday, July 12, 2019 with a copy of the Complaint
filed Friday, July 12, 2019 attached.

Hearing date  :
Service issued: Friday, July 12, 2019

For Sheriff Use Only

# COMMONWEALTH OF VIRGINIA



ROANOKE COUNTY CIRCUIT COURT
Civil Division
305 EAST MAIN STREET
SALEM  VA
(540) 387-6205

Summons

To: RISK MGMT PROGRAMS INC                      Case No. 161CL19000966-00
    SUBSIDIARY OF METIS HOLDINGS
    C/0 B L CRUMP
    REGISTERED AGENT
    100 SHOCKOE SLIP, 2ND FLOOR
    RICHMOND VA 23219

The party upon whom this summons and the attached complaint are served is hereby notified
that unless within 21 days after such service, response is made by filing in the clerk's office
of this court a pleading in writing, in proper legal form, the allegations and charges may be
taken as admitted and the court may enter an order, judgment, or decree against such party
either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Friday, July 12, 2019

Clerk of Court: STEVEN A. MCGRAW

by _____
                    (CLERK/DEPUTY CLERK)

Instructions:

Hearing Official:

Attorney's name:   WILLIAMS, MELVIN B; ESQ
                   1320 THIRD STREET, SW
                   ROANOKE VA 24016

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE COUNTY OF ROANOKE

DAVID BROOKS,          )
     Plaintiff          )
                 )
                 )      Case No. _CL19000966_
v.          )
                 )
RISK MANAGEMENT PROGRAMS, INC.,          )
A SUBSIDIARY OF METIS HOLDINGS, INC.          )
SERVE: B L Crump          )
     Registered Agent          )
     100 Shockoe Slip, 2nd floor          )
     Richmond, Virginia 23219          )
     (City of Richmond)          )
                 )
SERVE: Nancy Sullivan          )
     General Counsel          )
     1819 Electric Road, Suite C          )
     Roanoke, Virginia 24018          )
                 )
     Defendant.          )

## COMPLAINT TO ENFORCE SETTLEMENT AGREEMENT

     David Brooks, by counsel, moves for judgment against Risk Management Programs, Inc.,

a subsidiary of Metis Holdings, Inc. (*hereinafter* "RMP") for breach of a Settlement Agreement

and Release[1] executed between the Parties on May 10, 2019. In support of this Complaint Mr.

Brooks states the following:

     1.     RMP hired David Brooks as Vice President on or about July 10, 2015 and entered

into an employment agreement with Mr. Brooks, which agreement was later superseded by an

employment agreement dated September 13, 2018.

---

[1] *Hereinafter* "Settlement Agreement," a true and correct copy of the fully executed agreement is attached hereto as Exhibit 1, which Brooks adopts and incorporates into this Complaint by this reference thereto.

2. RMP terminated Brooks' employment on or about February 1, 2019.

3. Thereafter, Brooks asserted certain claims against RMP and the Parties entered into negotiations to resolve those claims.

4. The negotiations resulted in execution of the Settlement Agreement and Release.

5. The Settlement Agreement provided that RMP would pay to Brooks $263,952 in two (2) installments.

6. RMP timely paid the first payment.

7. The second installment, in the amount of $110,592, RMP was to pay to Brooks "within seven days of the Brooks' family's relocation from Virginia." *Settlement Agreement* at ¶ I.C.

8. The Settlement Agreement, negotiated over several weeks by the parties with the benefit of legal counsel, does not require David Brooks or his family to offer any proof of relocation from Virginia.

9. Counsel for Brooks notified counsel for RMP that "[t]he Brooks are scheduled to close on the sale of their Roanoke home on the 28th. At that point they will cease to be resident (sic) of Roanoke." *See Exhibit 2*, email message from counsel for Brooks to counsel for RMP, dated June 24, 2019, 11:46 AM.

10. On June 28, 2019, Brooks executed an affidavit, under oath and under penalty of perjury, stating:

    a. "I am David W. Brooks, Jr." *See Exhibit 3 attached hereto*, Affidavit of David W. Brooks, Jr.

b.      "Upon becoming employed by Risk Management Programs, Inc., I

became a resident of Roanoke County, Virginia, along with my family, at

1146 Belcroft Court, Roanoke, Virginia 24018." *Id.*

c.      "The home at Belcroft Court remained our residence until June 28, 2019:

on June 28, 2019, my wife and I closed on the sale of this residence." *Id.*

d.      "As of June 28, 2019, neither I nor any member of my nuclear family

owns a residence or resides as owner or tenant in the Commonwealth of

Virginia." *Id.*

e.      "I am signing this Affidavit after the closing on the sale of the house has

been accomplished, and later this day I will be physically leaving the

Commonwealth of Virginia along with my nuclear family with no intention for us

to return as a resident thereof in accordance with my prior agreement." *Id.*

11.     Counsel for Brooks forwarded Brooks' Affidavit to Jennifer Royer, counsel for

RMP, at 3:09 PM on June 28, 2019. *See Exhibit 4 attached hereto*, email message. The email

stated,

> Attached is an affidavit from David Brooks: the Affidavit is proof that Mr. Brooks
> and his family no longer reside in Virginia, i.e., have relocated from Virginia, as of
> June 28, 2019.
> Please direct your client to make payment of the second installment payment in
> the amount of $110,592 within the next seven (7) days, and let me know how to
> go about taking possession of the check once available.

12.     Subsequent email correspondence between counsel for the parties is attached

hereto, collectively, as Exhibit 5.

13.   Communications among counsel for the Parties, at times, included Nancy Sullivan, Corporate Counsel for RMP, who is listed in the Settlement Agreement as the person to whom notices for RMP should be delivered. Settlement Agreement at V.A.

14.   Moreover, on July 3. 2019, counsel for RMP indicated that, "I've spoken to my client ... ." *Ex. 5*, at 2, email from Jennifer Royer, dated July 3, 2019 at 4:03 PM.

15.   In short, RMP refused to accept Mr. Brooks' affidavit as proof that the Brooks family had relocated from Virginia, instead demanding additional proofs, to include proof of establishing residency in another state.

16.   The Settlement Agreement demands no such proofs from Brooks, and his Affidavit is sufficient to alert RMP that he and his family have complied with his obligations under the Settlement Agreement to relocate from Virginia.

17.   More than seven (7) days have passed since the Brooks family relocated from Virginia. *See Brooks' Affidavit.*

18.   To date, RMP has not paid to Mr. Brooks the second installment of $110,592 which it obligated itself to do under the Settlement Agreement "within seven days of the Brooks' family's relocation from Virginia." *Settlement Agreement* at I.C.

19.   RMP has breached the Settlement Agreement.

20.   The Settlement Agreement provides that:

> Should legal action be undertaken to interpret, construe, or enforce this Agreement then the substantially prevailing Party in any such action shall be entitled to an award of his/its attorney's fees and costs incurred in any such legal action.

*Settlement Agreement* at V.G.

21.    Accordingly, Brooks seeks an award of his costs and attorney's fees for prosecuting this action.

WHEREFORE, David Brooks moves for judgment against Risk Management Programs, Inc., a subsidiary of Metis Holdings, Inc. in the amount of $110,592, with interest thereon at the judgment rate from July 5, 2019 until paid, an award of attorney's fees in an amount to be determined at the conclusion of this action, and its costs expended herein.

RESPECTFULLY SUBMITTED,
DAVID BROOKS

Of counsel

Melvin E. Williams (VSB No. 43305)
  mel@melwilliamslaw.com
Meghan S. Strickler (VSB No. 88556)
  meghan@melwilliamslaw.com
MEL WILLIAMS PLC
1320 Third Street, SW
Roanoke, Virginia 24016
540-266-7800
540-206-3857 facsimile
       Counsel for David Brooks

# EXHIBIT 1

RISK MANAGEMENT PROGRAMS, INC.
## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter referred to as "Agreement") is made and entered into effective as of the 10th day of May, 2019, by and between DAVID BROOKS (hereinafter referred to as "Brooks") and RISK MANAGEMENT PROGRAMS, INC., a subsidiary of Metis Holdings, Inc. (hereinafter collectively referred to as "Company"). Brooks and Company are hereinafter referred to as the "Parties."

Whereas, Brooks was employed by the Company in the position of Vice President pursuant to that certain Employment Agreement dated July 1, 2015, and that certain Amended and Restated Employment Agreement dated September 13, 2018; and

Whereas, Brooks was terminated effective February 1, 2019; and

Whereas, the Parties have stated various claims against each other arising from Brooks' employment with the Company and the Amended and Restated Employment Agreement; and

Whereas, the Parties now desire to mutually settle and compromise any and all prior and existing issues between them related to such employment.

Now, therefore, in consideration of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

I.   TERMS

    A.   Purpose. The purpose of this Agreement is to settle and compromise all existing issues arising from Brooks' employment relationship, to release the Company from all legal claims Brooks may have against it, and to provide for the payment of a sum of money in exchange for Brooks' releases.

    B.   Brooks Family Relocation. Brooks, for himself, his spouse, and his minor children, agrees to relocate himself, his spouse, and his minor children from Virginia on or before August 1, 2019, and agrees that none of them shall relocate back into Virginia before August 1, 2023. Brooks' spouse, Jennifer Brooks, by signing this Agreement, agrees to relocate herself, her spouse, and her minor children from Virginia on or before August 1, 2019, and agrees that none of them shall relocate back into Virginia before August 1, 2023. Time is of the essence for the performance of this obligation.

    C.   Payment. The Company will pay to Brooks the total sum of $236,952 as follows: the first installment of $126,360 will be payable upon the execution of this Agreement by Brooks and Jennifer Brooks; the second installment of $110,592 will be payable within seven days of the Brooks' family's relocation from Virginia. If the Brooks family does not relocate from Virginia on or before August 1, 2019,



Brooks shall immediately repay the first installment of $126,360 to the Company, and the Company's obligation to pay the second installment shall be null and void. The Parties hereto expressly agree that the payments made in accordance with this Agreement are in lieu of any and all other severance benefits and claims.

D.   **Taxes.** Brooks agrees that to the extent that any taxes of any kind may be due or payable as a result of the payment of the consideration included herein, Brooks will be responsible for the payment of such taxes and will hold the Company harmless in the event of any claim against it for payment of taxes, interest, or penalties.

To the extent that the amounts paid to Brooks pursuant to this agreement are reportable to the Internal Revenue Service, Company will report those amounts to the IRS via a Form 1099 as miscellaneous income.

E.   **Climb to Safety Contract Still in Effect.** The Licensing Agreement, attached hereto as Exhibit A, by and between Metis Holdings, Inc. and Climb to Safety, LLC will remain in full force and effect, and nothing hereunder shall be deemed to change or amend the terms of that agreement.

Brooks agrees to provide the Company with an address to which payments under the Licensing Agreement may be made. If Brooks fails to provide a current address to the Company, payments will be sent to the address the Company has on file as of the date of this Agreement. The Company shall not be liable for any lost or misdirected payments.

F.   **Effect of Amended and Restated Employment Agreement.** Paragraphs 12-18 of the Amended and Restated Employment Agreement, attached hereto as Exhibit B, by and between Brooks and the Company remain in full force and effect and are material terms of this Agreement as if stated in their entirety hereunder.

Brooks agrees that the Company shall have no duty or obligation to defend Brooks or to provide Brooks with any insurance coverage or to pay any damages, expenses, costs, or fees for claims made against Brooks related to or arising from his employment with the Company.

G.   **Confidentiality.** Brooks and Jennifer Brooks agree to hold confidential the terms of this Agreement, with the exception of their personal legal or financial advisors, who are also bound to confidentiality under this Agreement.

II.   **RELEASE AND NON-DISPARAGEMENT - BROOKS**

A.   For and in consideration of the representations and promises set forth above, Brooks does hereby release, acquit, and forever discharge the Company, its owners, officers, directors, authorized representatives, any Company subsidiaries, affiliates and related companies, agents, employees, attorneys, accountants as well as the respective present and future known or unknown heirs, personal

2





representatives, successors and assigns of any of them (hereinafter referred to as "Released Parties") from any and all claims, demands, debts, actions, causes of actions, suits, contracts, agreements, attorneys' fees, obligations, accounts and liabilities of any kind or character whatsoever, known or unknown, suspected or unsuspected, in contract or in tort, at law or in equity, which Brooks ever had, or now has, against the Released Parties, including but not limited to, any and all claims sounding in tort or contract or for breach of duty, infliction of mental distress, fraud, misrepresentation, negligence, libel, slander, defamation, wrongful discharge, constructive discharge; loss of income, compensatory, liquidated, or punitive damages, attorneys' fees and costs, back pay, front pay, incentive pay or bonus payments under any program or plan, whether liquidated or not; all claims based on any alleged contractual or other right to participate in any insurance plan, benefit plan, or severance program; all claims regarding the calculation of accrued, unused vacation or sick leave; any claims arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Americans with Disabilities Act, the Virginia Human Rights Act, and the Family Medical Leave Act.

Brooks acknowledges and agrees that while this release does not preclude him from filing a charge with the Equal Employment Opportunity Commission or a similar state or local agency, or from participating in any investigation or proceeding with such agency, he will not seek any damages, and expressly waives the right to recover any such damages, for any complaint or charge filed against the Released Parties with any federal, state, or local board, agency, or court. The Company expressly disclaims any liability for any claim of discrimination and expressly reserves its rights to contest the same.

B.   A breach of any provision, term, covenant, or obligation of this Agreement shall in no way serve to affect or invalidate the release of the Released Parties by Brooks.

C.   Brooks further expressly agrees and stipulates that the following statements are true and factual, and may be admissible in any court or other proceeding involving the Parties as conclusive of the facts set out herein:

   1.   Brooks acknowledges that he has been advised to obtain the advice of independent legal counsel prior to executing this Agreement regarding any rights, privileges, claims, causes of action, or damages that he had or has which he is releasing, waiving, and forever discharging by entering into this Agreement.

   2.   The Agreement covers both claims of which Brooks has knowledge and those of which he may not have knowledge, which have accrued by the time of execution of this Agreement.

3





iii. In determining to execute this Agreement, Brooks has not relied on any representations, promises, or agreements of any kind other than those set forth expressly in this Agreement.

D. Brooks agrees to forbear from making, causing to be made, publishing, ratifying, or endorsing any and all disparaging remarks, derogatory statements or comments made to anyone with respect to the Company, its owners, officers, directors, authorized representatives, any Company subsidiaries, affiliates and related companies, agents, employees, attorneys, or accountants. Further, Brooks agrees to forbear from making any public or non-confidential statement with respect to the any claim or complaint against the Company, its owners, officers, directors, authorized representatives, any Company subsidiaries, affiliates and related companies, agents, employees, attorneys, or accountants without the mutual consent of each of them, to be given in advance of any such statement.

III.   RELEASE AND NON-DISPARAGEMENT – COMPANY

A. For and in consideration of the representations and promises set forth above, the Company does hereby release, acquit, and forever discharge Brooks from any and all claims, demands, debts, actions, causes of actions, suits, contracts, agreements, attorneys' fees, obligations, accounts and liabilities of any kind or character whatsoever, known or unknown, suspected or unsuspected, in contract or in tort, at law or in equity, which the Company ever had, or now has, against Brooks, including but not limited to, any and all claims sounding in tort or contract or for breach of duty, fraud, misrepresentation, negligence, libel, slander, or defamation; compensatory, liquidated, or punitive damages; attorneys' fees and costs. Notwithstanding the foregoing, the Company does not waive or release any claims against Brooks arising under paragraphs 12-18 of the Amended and Restated Employment Agreement, this Settlement Agreement and Release, and that certain Licensing Agreement by and between Climb to Safety, LLC and Metis Holdings, inc.

B. Chris Carey ("Carey") agrees to forbear from making, causing to be made, publishing, ratifying, or endorsing any and all disparaging remarks, derogatory statements or comments made to anyone with respect to Brooks. Further, Carey agrees to forbear from making any public or non-confidential statement with respect to the any claim or complaint against Brooks arising prior to the execution of this Agreement without Brooss' consent, to be given in advance of any such statement.

V.   MISCELLANEOUS

A. Notices: All notices, requests, demands, and other communications required or permitted to be given hereunder shall be deemed to have been duly given upon receipt if in writing and delivered personally, or mailed first class, postage prepaid, registered or certified mail, and addressed as follows:

4



If to the Company:        Nancy Sullivan
General Counsel
1819 Electric Road, Suite C
Roanoke, Virginia 24018

If to Brooks:        David Brooks
c/o Mel Williams PLC
1320 Third Street, SW
Roanoke, Virginia 24016

**B.**    **Reemployment:** Brooks agrees not to seek reemployment with the Company in the future. Brooks further understands and agrees that he is not eligible for reemployment with the Company or any of the Company's subsidiaries or affiliates.

**C.**    **Entire Agreement:** This Agreement constitutes the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings, whether oral and written, between the parties hereto, with respect to such subject matter.

**D.**    **Amendment and Modification:** This Agreement shall not be modified, amended, or changed in any respect except in writing duly signed by the Parties hereto.

**E.**    **Governing Law; Choice of Forum:** This Agreement shall be governed by, interpreted, construed, and enforced in accordance with the laws of the Commonwealth of Virginia. The state and federal courts serving Roanoke County, Virginia, shall be the sole venues for claims arising out of the interpretation, construction or enforcement of this Agreement.

**F.**    **Counterparts:** This Agreement may be executed in counterparts, each part of which will be deemed an original document, but all of which constitute a single document. It shall not be necessary for all parties to have signed the same counterpart, provided that all Parties have signed at least one counterpart.

**G.**    **Attorney's Fees and Costs:** Should legal action be undertaken to interpret, construe, or enforce this Agreement then the substantially prevailing Party in any such action shall be entitled to an award of his/its attorney's fees and costs incurred in any such legal action.

**H.**    **Voluntary Agreement:** Brooks warrants that he has had the opportunity to seek representation by legal counsel of his choice in connection with this Agreement, and that he is fully aware of the terms contained in this Agreement, and has voluntarily and without coercion or duress of any kind entered into this Agreement.

5



I.  **Binding Effect:**  This Agreement shall be binding on any and all successors and assigns of the Parties.

J.  **Severability:**  In the event that any clause, sentence, paragraph, or part of this Agreement shall be deemed invalid, unenforceable, or against public policy, it shall not affect, impair, invalidate, or nullify the remaining provisions of this Agreement, but such invalidation shall be confined to the clause, sentence, paragraph, or part of this Agreement so invalidated, unenforceable, or against public policy.

IN WITNESS HEREOF, the Parties hereto have executed or caused to be executed this Agreement on the date indicated below.

RISK MANAGEMENT PROGRAMS, INC.

By _____
Chris Carey

Title  President

Date  5/13/19

As to Section III.B. only:

_____
Chris Carey

Date  5/13/19

*[Remainder of Page Intentionally Blank]*

6



_____

**David Brooks**

Date _____

As to sections I.B. and I.G., only:

_____

**Jennifer Brooks**

Date 5/10/19

*[Remainder of Page Intentionally Blank]*



# EXHIBIT 2

Thursday, July 11, 2019 at 4:19:52 PM Eastern Daylight Time

**Subject:** David Brooks
**Date:** Monday, June 24, 2019 at 11:47:00 AM Eastern Daylight Time
**From:** Mel Williams
**To:** Jennifer D. Royer
**Attachments:** image001.png

Jennifer:

The Brooks are scheduled to close on the sale of their Roanoke home on the 28th. At that point they will cease to be resident of Roanoke. What will RMP require to confirm that the Brooks have ceased to be resident of Roanoke and prompt issuance of the second installment payment of the settlement?

Melvin E. "Mel" Williams
MEL WILLIAMS PLC
1320 Third ST, SW
Roanoke, Virginia 24016
540-266-7800
540-206-2857 *facsimile*
mel@melwilliamslaw.com
www.melwilliamslaw.com



MEL WILLIAMS PLC
*Attorney at Law*

This message and any attachments constitute attorney work product and may be subject to the attorney-client privilege. If you are not the intended recipient of this message, then please notify the sender promptly and delete this message and any attachments.

# EXHIBIT 3

### AFFIDAVIT OF DAVID W. BROOKS. JR.

I, David W. Brooks, Jr. hereby state under penalty of perjury that:

1. I am David W. Brooks, Jr.

2. Upon becoming employed by Risk Management Programs, Inc., I became a resident of Roanoke County, Virginia, along with my family, at 1146 Belcroft Court, Roanoke, Virginia 24018.

3. The home at Belcroft Court remained our residence until June 28, 2019: on June 28, 2019, my wife and I closed on the sale of this residence.

4. As of June 28, 2019, neither I nor any member of my nuclear family owns a residence or resides as owner or tenant in the Commonwealth of Virginia.

5. I am signing this Affidavit after the closing on the sale of the house has been accomplished, and later this day I will be physically leaving the Commonwealth of Virginia along with my nucelear family with no intention for us to return as a resident thereof in accordance with my prior agreement.

David W. Brooks, Jr.

Subscribed and sworn to before Melvin E. Williams, a Notary Public for the Commonwealth of Virginia, at *12:25 p.m.* on June 28, 2019.

Notary Public

MELVIN EDWARD WILLIAMS
NOTARY PUBLIC
REGISTRATION # 7691528
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES DEC. 31, 2020

My commission expires: December 31, 2020
Registration No. 7691528

# EXHIBIT 4

**Subject:** David Brooks
**Date:** Friday, June 28, 2019 at 3:09:10 PM Eastern Daylight Time
**From:** Mel Williams
**To:** Jennifer D. Royer
**CC:** Summer Harper
**BCC:** David Brooks
**Attachments:** image001.png, Brooks Affidavit 6.28.19.pdf

Jennifer:

Attached is an affidavit from David Brooks: the Affidavit is proof that Mr. Brooks and his family no longer reside in Virginia, *i.e.,* have relocated from Virginia, as of June 28, 2019.

Please direct your client to make payment of the second installment payment in the amount of $110,592 within the next seven (7) days, and let me know how to go about taking possession of the check once available.

Melvin E. "Mel" Williams
MEL WILLIAMS PLC
1320 Third ST, SW
Roanoke, Virginia 24016
540-266-7800
540-206-2857 *facsimile*
mel@melwilliamslaw.com
www.melwilliamslaw.com



MEL WILLIAMS PLC
*Attorney at Law*

This message and any attachments constitute attorney work product and may be subject to the attorney-client privilege. If you are not the intended recipient of this message, then please notify the sender promptly and delete this message and any attachments.

# EXHIBIT 5

**Thursday, July 11, 2019 at 3:55:59 PM Eastern Daylight Time**

| | |
|---|---|
| **Subject:** | Re: David Brooks |
| **Date:** | Wednesday, July 3, 2019 at 4:18:45 PM Eastern Daylight Time |
| **From:** | Mel Williams |
| **To:** | Jennifer D. Royer |
| **BCC:** | David Brooks |
| **Attachments:** | image001.png, image002.jpg, image003.jpg, image004.jpg, image005.jpg, image006.jpg, image007.jpg |

Jennifer:

We stand by Mr. Brooks affidavit, and you have my representation an attorney, subject to applicable ethical rules, that the Brooks, *i.e.*, David, Jennifer, and their children, are no longer residents of Virginia.

Nothing more will be forthcoming to 'prove' that they are no longer residents of Virginia. Nothing in the agreement requires that the Brooks establish residency in another state, and they decline to provide proof of such residency, either now or in any discovery that your clients may wish to pursue should legal action ensue.

As previously, stated, should the second installment not be received by me pursuant to the timeline directed by the settlement agreement then legal action will be undertaken.

Melvin E. "Mel" Williams
MEL WILLIAMS PLC
1320 Third ST, SW
Roanoke, Virginia 24016
540-266-7800
540-206-2857 *facsimile*
mel@melwilliamslaw.com
www.melwilliamslaw.com



This message and any attachments constitute attorney work product and may be subject to the attorney-client privilege.  If you are not the intended recipient of this message, then please notify the sender promptly and delete this message and any attachments.

**From:** "Jennifer D. Royer" <jroyer@royerlawfirm.com>
**Date:** Wednesday, July 3, 2019 at 4:03 PM
**To:** Mel Williams <mel@melwilliamslaw.com>
**Subject:** RE: David Brooks

Mel,

I've spoken with my client, and Metis will accept affidavits from BOTH Brookses provided that the information contained in the affidavit establishes verifiable proof of residency outside of Virginia, e.g., an address in another state with a sworn representation that they have established their residency in that other state as of the date of the affidavit. We have to be able to verify that the Brookses have, in fact, relocated.

The affidavit attached is not sufficient for a number of reasons, including, for example, the following:

1. There is no information in this affidavit setting forth facts that establish residency outside of Virginia. The only fact established by this affidavit is that the Brookses have sold their Virginia home.
2. The language choices in paragraph 4 give rise to a concern that the Brooks family could be staying with a non-nuclear member of their family inside Virginia.
3. Stating only that the Brookses "will be physically leaving the Commonwealth" later that day in paragraph 5 could be for any purpose whatsoever, including vacation, visiting friends, etc. Also, stating that they do not have an intention to return as residents also leaves open the possibility that once their vacation or visit outside of Virginia is complete, they could return to Virginia and stay with a non-nuclear member of their family as guests or visitors indefinitely.
4. Even if everything in the affidavit was otherwise sufficient and acceptable, Mrs. Brooks has not provided similar sworn statements, and she also made the agreement to relocate with their minor children.

Metis has no intention of delaying the conclusion of this matter with Mr. Brooks. In fact, I have the check for the balance of the settlement proceeds in my office now. It was cut on July 1. We simply need some evidence of actual relocation from the Commonwealth. The affidavit, as written, appears to be have been intentionally drafted to be true while also hiding the fact that the Brookses have not actually established residence outside of Virginia as required by the contract. If this is not true, please provide the requested information. If you want, I can draft an acceptable affidavit, or your clients can give us any of the other documents that we've agreed are acceptable.

As an aside, I'm certain we can conclude this matter without resulting to the courts as threatened, but if your clients deem it necessary to file a suit for specific performance, Metis will obtain the requested proof through discovery. Payment will be tendered upon receipt of such proof, and no judge will order Metis to pay their attorneys' fees. Filing suit will be a lose-lose proposition that just delays this agonizing matter indefinitely. Let's just get this done.

Thanks,
Jennifer

Jennifer D. Royer, Esquire



1901 Denniston Ave, S.W.

Post Office Box 4525
Roanoke, Virginia 24015
Telephone:  540.788.2982
Facsimile:  540.675.4093

*NOTICE from the Royer Law Firm, P.C.:  This message and its attachments are confidential and may be
protected by the attorney/client privilege.  If you are not the named addressee or if this message has been
addressed to you in error, you are directed not to read, disclose, reproduce, distribute, disseminate, or
otherwise use this transmission.  If you receive this message in error, please notify the sender immediately by
e-mail and delete and destroy this message and its attachments.*

**From:** Mel Williams <mel@melwilliamslaw.com>
**Sent:** Saturday, June 29, 2019 4:17 PM
**To:** Jennifer D. Royer <jroyer@royerlawfirm.com>
**Subject:** Re: David Brooks

Jennifer:

The Brooks have relocated out of Virginia. We stand by the notice provided to you
yesterday and demand that the second installment be paid in accordance with the
settlement agreement. If not paid, then we will file suit to enforce the settlement
agreement.

Sworn testimony, *i.e.,* a sworn affidavit, is certainly sufficient proof of relocating to the
extent that it is even required by the terms of the settlement agreement, or are we to
dispense with all sworn testimony in our judicial system absent independent
corroboration of the testimony, or as you say "[h]is word isn't good enough?" To
demand more is absurd – underscores the personal animus still at play, and is to
accuse David Brooks of committing perjury and me of making a false representation.

Lastly, I realized that Nancy Sullivan inadvertently was copied on my last email to you. I
have omitted her from this email to avoid inappropriate contact with a party
represented by counsel.

Melvin E. "Mel" Williams
MEL WILLIAMS PLC
1320 Third ST, SW
Roanoke, Virginia 24016
540-266-7800
540-206-2857 *facsimile*
mel@melwilliamslaw.com
www.melwilliamslaw.com



**MEL WILLIAMS** PLC
. *Attorney at Law*

This message and any attachments constitute attorney work product and may be subject to the attorney-client privilege. If you are not the intended recipient of this message, then please notify the sender promptly and delete this message and any attachments.

**From:** "Jennifer D. Royer" <jroyer@royerlawfirm.com>
**Date:** Friday, June 28, 2019 at 3:25 PM
**To:** Mel Williams <mel@melwilliamslaw.com>
**Cc:** Nancy Sullivan <NSullivan@riskprograms.com>
**Subject:** RE: David Brooks

It's not absurd. Your clients have to prove that they've relocated. His word isn't good enough. Implicit in an agreement to relocate is extrinsic proof of relocation. Why is it so hard for your clients to produce it? My client doesn't care about the terms of the deal they struck to move – just proof that they're actually relocating. You can redact all of the business terms. Your client can produce current licenses – common proof of residency – with their address redacted because it shows residency. The DMV requires more than an affidavit to issue a license. My client will accept the same forms of proof that the DMV accepts.

Jennifer D. Royer, Esquire

**ROYER** LAW FIRM, P.C.
1901 Denniston Ave, S.W.
Post Office Box 4525
Roanoke, Virginia 24015
Telephone: 540.788.2982
Facsimile: 540.675.4093

*NOTICE from the Royer Law Firm, P.C.: This message and its attachments are confidential and may be protected by the attorney/client privilege. If you are not the named addressee or if this message has been addressed to you in error, you are directed not to read, disclose, reproduce, distribute, disseminate, or otherwise use this transmission. If you receive this message in error, please notify the sender immediately by e-mail and delete and destroy this message and its attachments.*

**From:** Mel Williams <mel@melwilliamslaw.com>
**Sent:** Friday, June 28, 2019 3:19 PM
**To:** Jennifer D. Royer <jroyer@royerlawfirm.com>
**Cc:** Nancy Sullivan <NSullivan@riskprograms.com>
**Subject:** Re: David Brooks

Jennifer:

This is absurd. The settlement agreement states no such requirement: the agreement does not speak to proof of relocation at all. If your client intended to demand proof of relocation then it should have included such in the agreement.

We stand by the affidavit as being more than necessary, and demand payment within 7 days.

Melvin E. "Mel" Williams
MEL WILLIAMS PLC
1320 Third ST, SW
Roanoke, Virginia 24016
540-266-7800
540-206-2857 *facsimile*
mel@melwilliamslaw.com
www.melwilliamslaw.com



MEL WILLIAMS PLC
*Attorney at Law*

This message and any attachments constitute attorney work product and may be subject to the attorney-client privilege. If you are not the intended recipient of this message, then please notify the sender promptly and delete this message and any attachments.

**From:** "Jennifer D. Royer" <jroyer@royerlawfirm.com>
**Date:** Friday, June 28, 2019 at 3:15 PM
**To:** Mel Williams <mel@melwilliamslaw.com>
**Cc:** Nancy Sullivan <NSullivan@riskprograms.com>
**Subject:** RE: David Brooks

Mel,

I appreciate your client's effort, but like I said before, we need to see proof of residency. Your client's affidavit means nothing to mine. My client has already been advised that the Brookses are moving to Kentucky. My client doesn't care where in Kentucky (or whatever state they actually move to), but we need to see proof of relocation – a deed of sale, a lease agreement, a driver's license, something that would establish residency – for both Brookses. Once that is provided, I'll provide information on getting the check to you.

Jennifer D. Royer, Esquire

# ROYER
LAW FIRM, P.C.
1901 Denniston Ave., S.W.
Post Office Box 4525
Roanoke, Virginia 24015
Telephone: 540.788.2982
Facsimile: 540.675.4093

*NOTICE from the Royer Law Firm, P.C.: This message and its attachments are confidential and may be protected by the attorney/client privilege. If you are not the named addressee or if this message has been addressed to you in error, you are directed not to read, disclose, reproduce, distribute, disseminate, or otherwise use this transmission. If you receive this message in error, please notify the sender immediately by e-mail and delete and destroy this message and its attachments.*

**From:** Mel Williams <mel@melwilliamslaw.com>
**Sent:** Friday, June 28, 2019 3:09 PM
**To:** Jennifer D. Royer <jroyer@royerlawfirm.com>
**Cc:** Summer Harper <assistant@melwilliamslaw.com>
**Subject:** David Brooks

Jennifer:

Attached is an affidavit from David Brooks: the Affidavit is proof that Mr. Brooks and his family no longer reside in Virginia, *i.e.,* have relocated from Virginia, as of June 28, 2019.

Please direct your client to make payment of the second installment payment in the amount of $110,592 within the next seven (7) days, and let me know how to go about taking possession of the check once available.

Melvin E. "Mel" Williams
MEL WILLIAMS PLC
1320 Third ST, SW
Roanoke, Virginia 24016
540-266-7800
540-206-2857 *facsimile*
mel@melwilliamslaw.com
www.melwilliamslaw.com



MEL WILLIAMS plc

*Attorney at Law*

This message and any attachments constitute attorney work product and may be subject to the attorney-client privilege. If you are not the intended recipient of this message, then please notify the sender promptly and delete this message and any attachments.